IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

United States of America,

    Plaintiff,

vs.                                                   Case No. 14-10050-01, 02-JTM

Oscar R. Alvarado and Brayan A. Osuna-
Gutierrez,

    Defendants.

MEMORANDUM AND ORDER

This matter is before the court on the motions to suppress of defendants Oscar Alvarado and Brayan Osuna-Gutierrez. The court conducted an evidentiary hearing on the defendants' motions on June 4, 2014. As stated at the conclusion of that hearing, and as further provided herein, the court denies the motions to suppress.

First, as noted at the hearing, the court finds that the defendants have standing to challenge the stop and search of the vehicle driven by Alvarado. The government contends first that Alvarado's operation of the vehicle at the place it was stopped in Kansas was contrary to the understanding between Alvarado and his mother, Anna-Maria Henriquez, who rented the vehicle in Los Angeles, California. According to Henriquez, who testified at the hearing, her son said that he would be traveling to Maryland to look for work.

Alternatively, the government argues that Henriquez herself committed fraud against the rental company, in that she was listed as the primary driver on the rental contract.

The court rejects both arguments. Nothing in the rental contract requires that the vehicle be operated solely by Henriquez, nor does it restrict operation of the vehicle to the shortest route between Los Angeles and Maryland. The rental agreement for the vehicle explicitly identifies "ALVARADO, OSCAR" as a permitted "Additional Driver". While the primary purpose of trip was travel to Maryland, this did not preclude minor deviations in the route.[1]

Turning to the stop itself, the defendants along with two other persons occupied a vehicle which was stopped by Sedgwick County Deputy Sheriff Michael Guthrie at around 11:41 p.m. on March 16, 2014. Guthrie was parked on the shoulder of I-135 near Park City, Kansas when he saw the car driven by Alvarado pass him in the left lane. When it did not return to the right lane, he pursued the vehicle and stopped it for a violation of K.S.A. 8-1522(c). Approaching the vehicle, he smelled marijuana. He also noted that the vehicle, a 2014 Dodge Journey with Nevada plates, appeared to lack any luggage.

Guthrie called for backup, and a second deputy arrived about 12:07 a.m. They began a search which revealed both marijuana, and (around 12:40 a.m.) methamphetamine hidden in the body of the car.

---

[1] The shortest route between Los Angeles, and Baltimore Maryland, according to Google Maps, follows Interstate 44 for 2646 miles or 38 hours.  But traveling through Las Vegas and Denver on Interstate 70 increases this distance by only 31 miles (a 1% increase), and a further detour to Wichita adds only 109 miles for a total distance of 2786 miles (a 5% increase).

The defendants argue that Deputy Guthrie caused the lane violation, first by his presence on the shoulder, and then by his return to the roadway and pursuit of their vehicle. The defendants stress that the video record of the stop shows that, in catching up to Alvarado, Guthrie's speed at one point reached 111 miles per hour.

First, the argument fails in light of the facts. Alvarado passed Guthrie and remained in the passing lane for nearly two miles.[2] Although the defendants suggest that Alvarado may have returned to the right lane after cresting a hill, a close examination of the evidence presented at the hearing supports the conclusion that Alvarado never returned to the right lane until after Guthrie activated his emergency lights. The pursuit occurred at night, and Guthrie did not activate his emergency lights until after he had caught up with Alvarado's vehicle. Nothing in the facts suggest that Guthrie's actions "caused" the apparent violation.

Second, whatever occurred during or after Guthrie began his pursuit, the fact remains that a violation of K.S.A. 8-1522(c) had already occurred. The statute prohibits remaining in the inside lane except while passing. The video first shows two other cars passing Guthrie in the left lane. Both returned to the right lane after one or two seconds. In contrast, when Alvarado passed Guthrie, his car was astride the centerline, moving into the passing lane. Guthrie thus had reason to believe that Alvarado violated K.S.A. 8-1522(c), even before he began his pursuit. The statute provides:

(c) Upon a highway located outside the corporate limits of any city divided

---

[2] The GPS coordinates from the video shows a distance of 1.8 miles, measuring from the point where Guthrie was stopped on the shoulder to the place where he first activated his emergency lights, alerting Alvarado that he needed to pull over.

> into two lanes of traffic proceeding in the same direction, all vehicles shall be driven in the right lane except when:
>
> (1) Overtaking and passing another vehicle;
> (2) preparing to make a proper left turn;
> (3) otherwise directed by official traffic-control devices; or
> (4) otherwise required by other provisions of law.

Nothing presented Alvarado from returning to the right lane, as the two preceding cars had done. Because he remained in the inner lane when he was not "passing another vehicle," a violation of the statute occurred.

Third, the defendants' legal arguments relating to Guthrie's actions as contributing to the violation are inapposite in the present case. Those arguments mistakenly rely on considerations relevant to the existence of an improper lane change under K.S.A. 8-1522(a)., which requires the maintenance of a single lane "as nearly as practical." This "practicality" language requires consideration of the degree of the violation, the condition of the roadway, and other factors, as the statute does not prohibit "an incidental and minimal lane breach." *State v. Marx*, 289 Kan. 657, 674, 215 P.3d 601 (2009). Thus, courts have sometimes had to consider whether an officer's conduct may have contributed to the improper lane change. *See United States v. Ochoa*, 4 F.Supp. 1007, 1011 (D. Kan. 1998) (no violation of 8-1522(a) under the facts of the case).

Because K.S.A. 8-1522(a) requires maintenance of a single "as nearly as practical" lane, the existence of a violation necessarily turns on numerous "factors such as weather, traffic, and road conditions." *Ochoa*, 4 F.Supp.2d at 1011 (citing *United States v. Dunn*, 1998 WL 8227 (10th Cir. 1998). In *Ochoa*, the officer's conduct was one facet of the relevant

driving conditions. K.S.A. 8-1522(c) does not require or support such a factor-based approach. The statute only allows travel in the inside or passing lane under specific conditions. The only relevant provision here is (c)(1): remaining in the inside lane while "[o]vertaking and passing another vehicle." Alvarado remained in the passing lane well past the point where he passed Guthrie, and was properly stopped.

The defendants next suggest that K.S.A. 8-1522(c) is void for vagueness. The defendants admit that no case has considered the constitutionality of the statue. In fact, Subsection (c) is far *less* vague than Subsection (a)'s requirement of maintaining a single lane if "practical," yet that provision has repeatedly been applied by both federal and Kansas state courts without any suggestion that it is impermissibly vague. Similarly, Subsection (c) is also far more definite than the Oklahoma statute prohibiting "imped[ing] the normal flow of traffic," which the Tenth Circuit has explicitly upheld against a vagueness challenge. *United States v. Borrego*, 66 F.3d Appx. 797, 800 (10th Cir. 2003).

At least one court has rejected a vagueness challenge against a similar statute. In *Baker v. State*, 50 S.W.3d 143, 146 (Tex.App. 2001), the defendants challenged the validity of a state statute requiring that vehicles stay in the right lane, except when passing, in certain posted areas. The court observed that

> people of ordinary intelligence would know from reading the sign that the left lane was for passing only. Furthermore, such persons would not have to guess as to whether they were passing another vehicle. It is obvious from the sign that, if a person is not in the process of passing another vehicle, the person is not to be in the left lane. *We think that a person of ordinary intelligence would know when the person is no longer passing a vehicle and must move from the left lane.*

50 S.W.3d at 146 (emphasis added).

"When reviewing a statute alleged to be vague, courts must indulge a presumption that it is constitutional, and the statute must be upheld unless the court is satisfied beyond all reasonable doubt that the legislature went beyond the confines of the Constitution." *United States v. Saffo*, 227 F.3d 1260, 1270 (10th Cir.2000). The court "must take into account the limitations in the English language with respect to being both specific and manageably brief and not deem void for vagueness those laws which are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *United States v. Michel*, 446 F.3d 1122, 1136 (10th Cir.2006) (quoting *United States v. Solomon*, 95 F.3d 33, 35 (10th Cir.1996) (internal citations and quotations omitted)). The fact that different courts may draw "subtle distinctions" in interpreting a law "does not necessarily render the statute vague for constitutional purposes." *Id.* The statute prohibiting travel in the inside lane unless "[o]vertaking or passing" another vehicle is readily understandable by persons of ordinary intelligence.

If the vehicle was properly stopped, Guthrie had probable cause justifying a search of the car. When the deputy approached the vehicle, he smelled a strong odor of raw marijuana coming from the passenger window. The occupants appeared nervous. Guthrie also noticed that the rental agreement, providing for a three-day basic term, seemed short for a cross-country trip. In addition, other than one or more backpacks, the vehicle lacked

any luggage, which Guthrie considered unusual given the number of passengers and the distance required for the trip.

Guthrie had Alvarado join him in his patrol vehicle while he checked his license and for outstanding warrants. When Guthrie told Alvarado that he had smelled marijuana when he was near the vehicle, Alvarado claimed that they had driven through Colorado and has consumed some medical marijuana there.

Guthrie was not required to take this story at face value, given the other facts in the case. Specifically, Alvarado was not stopped at the Colorado border, but after some six hours of additional driving inside Kansas. The smell of any marijuana consumed in Colorado would be highly attenuated, if not completely absent. Further, Guthrie states that he smelled raw, not burned, marijuana.

Taken together, the information available to Guthrie was sufficient to warrant the reasonable belief that raw marijuana, an illegal substance, was present in the vehicle. This probable cause justified the temporary detention of the vehicle and its occupants for the search which in due course revealed the presence of marijuana, marijuana paraphernalia, and methamphetamine in the vehicle.

IT IS ACCORDINGLY ORDERED this 13th day of June, 2014, that the defendants' Motions to Suppress (Dkt. 41, 42) are hereby denied.

                                           s/ J. Thomas Marten
                                           J. THOMAS MARTEN, JUDGE